1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JOSEPH LAKE,                               No.  2:19-cv-01439-KJM-KJN

12                  Plaintiffs,

13    v.                                          ORDER

14

15    CITY OF VALLEJO, VALLEJO POLICE
      DEP'T, GREG NYHOFF, STEVE
16    DARDEN, ANTHONY ROMERO-
      CANO,  TRAVIS ASPERGREN,
17    THEODORE "TED" J. POSTOLAKI,
      GREGG ROUSE, TIMOTHY NICHOLS,
18    LEE HORTON, SANJAY RANU-AKHA,
      ANDREW BIDOU, and DOES 1-15,

19              Defendants.

20

21              This order resolves three motions:  First, defendant City of Vallejo moves to strike

22    the first amended complaint as untimely, Mot. to Strike, ECF No. 23, which plaintiff opposes,

23    Opp'n to Mot. to Strike, ECF No. 28.  Second, plaintiff Joseph Lake moves to file a superseding

24    amended complaint, Mot. to Amend, ECF No. 25, which defendants oppose, Opp'n to Mot. to

25    Amend, ECF No. 29.  Third, defendants move for sanctions based on the contents of the first

26    amended complaint.  Mot. for Sanctions, ECF No. 32.

27

28
                                                    1

1       I.      BACKGROUND

2               A.  Factual Allegations[1]

3                   On July 27, 2018, three City of Vallejo police officers responded to a call

4       reporting a shooting victim.  Police Reports, ECF No. 21-8 at 8–9.[2]  Mr. Lake, a witness to the

5       incident, was walking away from the scene when the officers arrived.  *Id.*  The officers,

6       suspecting Mr. Lake may have been involved, asked Mr. Lake to produce identification three

7       times; each time he refused.  First Am. Compl. ("FAC"), ECF No. 21 ¶ 24; Police Reports at 8–9.

8       They then, according to police reports, moved to place Mr. Lake in handcuffs.  Police Reports at

9       8–9.  When Mr. Lake again did not comply with instructions, the three officers at the scene

10      elected to physically take him down to the ground.  *Id.*  The situation quickly got violent; after

11      taking Mr. Lake to the ground, the officers physically restrained him, and Mr. Lake contends they

12      broke his right arm.  *Id.*; Am. Compl. ¶¶ 25–35.  At each step, when describing their decision to

13      request identification from Mr. Lake, their decision to handcuff him, and their decision to restrain

14      him forcefully, the police emphasized that Mr. Lake "is 6'5" tall and weighs 330 pounds."  Police

15      Reports at 8–9.  Mr. Lake was arrested by the officers for misdemeanor obstruction of justice, but

16      charges were never brought due to insufficient evidence.  Notice of Intent Not to Prosecute,

17      ECF No. 21-9 at 2.

18              B.  Procedural Background

19                  On July 26, 2019, plaintiff filed his complaint, alleging unlawful stop, detention,

20      search and seizure and prosecution, and bringing an excessive force claim against defendants

21      under 42 U.S.C. § 1983.  Compl., ECF No. 1, ¶¶ 29–46.  On August 26, 2019, defendants filed

22      their answer and demanded a jury trial.  Answer, ECF No. 8.  On December 13, 2019, the court

23      convened an initial scheduling conference at which plaintiff's counsel did not appear.  ECF

24      No. 12.  At the scheduling conference, the court issued a pretrial scheduling order requiring that

25      /////

26

27      [1] To the extent the court references a complaint in this section, it references the First Amendment
        Complaint as the operative pleading.

28      [2] The complaint erroneously identifies July 18, 2018 as the date of the incident.

2

1    any amendments to the complaint be completed by February 28, 2020.  The parties later

2    stipulated to postpone the amendment deadline to March 20, 2020.  ECF No. 20.

3              Plaintiff filed his first amended complaint after the new deadline, on March 24,

4    2020.  *See* FAC.  Defendants responded with this motion to strike on April 7, 2020, alleging the

5    late filing was unduly prejudicial, *see* Mot. to Strike.  On April 13, 2020, plaintiff filed the

6    pending motion to amend his complaint.  *See* Mot. to Amend.  Plaintiff filed his opposition to the

7    motion to strike on May 26, 2020, and defendants, all represented by the same counsel, filed their

8    opposition to plaintiff's motion to amend on June 11, 2020.  The parties filed their respective

9    replies on June 18, 2020, and defendants filed their motion for sanctions on June 19.  Defendant

10   Reply, ECF No. 30; Plaintiff Reply, ECF No. 31; Mot. for Sanctions, ECF No. 32.  The court

11   analyzes the motions in the order filed.

12       II.       MOTION TO STRIKE

13             A.  Legal Standard

14             Federal Rule of Civil Procedure 12(f) provides "[t]he court may strike from a

15   pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial matter

16   is that which has no essential or important relationship to the claim for relief or the defenses being

17   pleaded[, and] [i]mpertinent matter consists of statements that do not pertain, and are not

18   necessary, to the issues in question.'" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.

19   1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382,

20   at 706–07, 711 (1990)), *rev'd on other grounds by* 510 U.S. 517 (2004).

21             A 12(f) motion to strike serves "to avoid the expenditure of time and money that

22   must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."

23   *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  The granting of a motion

24   to strike "may be proper if it will make trial less complicated or eliminate serious risks of

25   prejudice to the moving party, delay, or confusion of the issues." *Taheny v. Wells Fargo Bank,*

26   *N.A.*, No. 10-2123, 2011 WL 1466944, at *2 (E.D. Cal. Apr. 18, 2011) (citing *Fantasy*, 984 F.2d

27   at 1527-28).  However, "[m]otions to strike are disfavored and infrequently granted." *Neveau v.*

28   *City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citations omitted).  Indeed, a

1   motion to strike "'should not be granted unless it is clear that the matter to be stricken could have

2   no possible bearing on the subject matter of the litigation.'" *Id.* (quoting *Colaprico v. Sun*

3   *Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)); *see also Wynes v. Kaiser*

4   *Permanente Hospitals*, No. 10–00702, 2011 WL 1302916, at *12 (E.D. Cal. Mar. 31, 2011)

5   (noting "courts often require a showing of prejudice by the moving party").

6           A party seeking to justify a late filing must show the neglect demonstrated by the

7   lateness was "excusable." Fed. R. Civ. P. 6(b)(1)(B). "Excusable neglect" is an "equitable

8   doctrine" determined by application of a four-part test laid out in *Pioneer Inv. Servs. v. Brunswick*

9   *Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993). The four factors are "the danger of prejudice

10  to the [non-filing party], the length of the delay and its potential impact on judicial proceedings,

11  the reason for the delay, including whether it was within reasonable control of the movant, and

12  whether the movant acted in good faith." *Iopa v. Saltchuk-Young Brothers, Ltd.*, 916 F.3d 1298,

13  1301 (9th Cir. 2019) (quoting *Pioneer*, 507 U.S. at 395). "[U]nder *Pioneer*, the correct approach

14  is to avoid any per se rule," and the Ninth Circuit has left "the weighing of *Pioneer*'s equitable

15  factors to the discretion of the district court in every case." *Pincay v. Andrews*, 389 F.3d 853, 860

16  (9th Cir. 2004).

17          B.  Discussion

18          Defendants' motion to strike claims the increased costs stemming from "having to

19  file this motion" and defects they identify in the first amended complaint itself are prejudicial,

20  while recognizing the four day delay in filing is not prejudicial. Mot. at 5. They contend the

21  prejudice, weighed against the excuses of plaintiff, require that the court strike the first amended

22  complaint. *Id.*

23          Plaintiff's counsel's justification for her late filing rests on two main points. First,

24  she claims hardships posed by the current COVID-19 pandemic created a situation that made

25  timely filing extremely difficult. Opp'n at 5-7. Specifically, she represents she is a single mother

26  of a recently ill 21-month-old, which required she spend time gathering supplies as stay-at-home

27  orders went into effect. This essential task led to scheduling conflicts, compounded by the need

28  /////

4

1   to coordinate with experts and her paralegals who also were impacted by the pandemic.  Opp'n at

2   6; *see also* Declaration of Wendy Chau (Chau Decl.) ¶¶ 5–10, ECF No. 28-1.

3      Second, plaintiff's counsel asserts when she attempted to reach out to defense

4   counsel on March 20, 2020 by phone and email, she received no response.  Chau Decl. ¶¶ 11–15.

5   She attributes the silence at least partly to confusion about who was representing defendants.

6   Opp'n at 6.  Ms. Chau says she first reached out by phone and email to Mr. Timothy Smyth, the

7   prior attorney of record for all defendants on the matter, but received no response.  *Id.*; *see also*

8   Opp'n Ex. 2, ECF No. 28-2 (email response plaintiff's counsel received when requesting an

9   extension from Mr. Smyth and Vallejo City Attorney).  She also says that Mr. John Whitefleet,

10   who replaced Mr. Smyth as attorney of record on March 25th, ECF No. 22, had previously

11   introduced himself as an attorney on the case, but prior to his formal substitution.  Opp'n at 6.

12   Ms. Chau claims under the circumstances she was confused about who was the proper attorney

13   from whom to seek an extension of time.

14      Defendants do not dispute any of plaintiff's representations.  *See* Reply to Opp'n

15   to Mot. to Strike, ECF No. 30.

16      Turning to the *Pioneer* factors, the court finds plaintiff's late filing did not create a

17   significant delay or danger of prejudice for defendants.  Defendants had already agreed to the

18   extension for amendment to the 20th, and so knew an amended complaint was coming.  They

19   concede "four days is not prejudicial in terms of timing," Mot., at 5; *see also* Reply at 2, and the

20   amended pleading was still filed a day before a new defense attorney substituted into the case, *see*

21   Substitution of Attorney, ECF No. 22, rendering any disruption minimal if not nonexistent.

22   While defendants argue the costs imposed by their filing the motion to strike and otherwise in

23   responding to the amended complaint do rise to the level of undue prejudice, Mot. at 5, the court

24   is unpersuaded.  In part, defendants effectively ask the court to disregarding Rule 15's

25   presumption in favor of granting leave to amend.  The court finds no prejudice was created by the

26   late filing.

27      Moreover, nothing in the record suggests plaintiff's counsel was engaging in any

28   form of disfavored gamesmanship.  Rather, COVID-19 disrupted her life and business as it has so

1    many others, in ways it appears she did her best to manage.  While reaching out to opposing

2    counsel only on the date the amended complaint was due does not conform to best practice, doing

3    so does not provide evidence of bad faith.  *See* Opp'n at 6; *see also* Chau Decl.  ¶¶ 11, 12.  This is

4    especially so given that counsel filed the amended complaint only four days later.  *See* FAC; *see*

5    *also* Opp'n at 6; Chau Decl. ¶ 21.

6           Given the lack of prejudice, bad faith or significant delay, and the unprecedented

7    nature of the circumstances at the time, the court finds the late filing here was the result of

8    excusable neglect and DENIES the motion to strike.

9       III.     MOTION TO AMEND

10        A.  Legal Standard

11          A party seeking leave to amend pleadings after a deadline specified in the

12   scheduling order must first satisfy Federal Rule of Civil Procedure 16(b)'s "good cause" standard.

13   *Johnson v. Mammoth Recreations*, *Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992).  Under Rule 16(b),

14   "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P.

15   16(b)(4).  The burden of showing good cause is on the moving party.  *See Johnson*, 975 F.2d at

16   608; *see also Bella + Canvas LLC v. Artcanvas Inc.*, No. CV 19-4301, 2020 WL 1972580, at *1

17   (C.D. Cal. March 11, 2020).  Distinct from Rule 15(a)'s liberal amendment policy, Rule 16(b)'s

18   good cause standard focuses primarily on the diligence of the moving party, and its reasons for

19   seeking modification.  *Johnson*, 975 F.2d at 609.

20          Generally, a three-part test is applied to make Rule 16(b)(4) good cause

21   determinations.  *See, e.g., Pac. Coast Fed'n of Fishermen's Associations v. Murrillo*, No. 211-cv-

22   02980, 2017 WL 1166145, at *2-3 (E.D. Cal. 2017); *see also Jackson v. Laureate Inc.*, 186

23   F.R.D. 605, 608 (E.D. Cal. 1999).  A movant may demonstrate good cause by showing (1) it

24   diligently assisted the court in creating a workable Rule 16 order, *see In re San Juan Dupont*,

25   111 F.3d 220, 228 (9th Cir. 1999) (". . .all litigants must share in their mutual obligation to

26   collaborate with the district court *ab initio* in fashioning adequate case management and trial

27   procedures, or bear the reasonably foreseeable consequences of their failure to do so");  (2) non-

28   compliance with a scheduling deadline was due to developments that were not reasonably

1   foreseeable at the time of the scheduling conference, *see Johnson*, 975 F.2d at 609 ("as a practical

2   matter, extraordinary circumstances is a close correlate of good cause"); (3) it promptly and

3   diligently sought amendment of the scheduling order once it became apparent it would not be able

4   to comply with the deadline, *see Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233

5   (E.D. Cal. 1996) ("The focus of the Rule 16 good cause inquiry is on the moving party's

6   diligence, or lack thereof, in seeking amendment." (internal quotation omitted)).  The Ninth

7   Circuit has been clear that the third, last prong is the most significant: "'Rule 16(b)'s good-cause

8   standard primarily considers the diligence of the party seeking the amendment.'" *Federal Trade*

9   *Comm'n v. Marshall*, 781 Fed. Appx. 599, 603 (9th Cir. 2019) (quoting *Johnson*, 975 F.2d at

10  609).

11          If good cause exists, the movant next must satisfy Rule 15(a). *Cf. id.* at 608 (citing

12  approvingly *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987), for explication of this order

13  of operations).  Federal Rule of Civil Procedure 15(a)(2) provides, "[t]he court should freely give

14  leave [to amend the pleadings] when justice so requires" and the Ninth Circuit has "stressed Rule

15  15's policy of favoring amendments." *Ascon Props, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160

16  (9th Cir. 1989).  "In exercising its discretion 'a court must be guided by the underlying purpose of

17  Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'"

18  *DCD Programs, Ltd. v. Leighton et al.*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States*

19  *v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).  Courts consider five factors in determining whether

20  justice requires allowing amendment under Rule 15(a): "bad faith, undue delay, prejudice to the

21  opposing party, futility of amendment, and whether the [party] has previously amended his

22  pleadings." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citation omitted); *see also*

23  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (citing *Western Shoshone Nat'l Council v.*

24  *Molini*, 951 F.2d 200, 204 (9th Cir. 1991)).

25          B.  Discussion

26          Plaintiff's arguments rest solely on Rule 15(a)(2)'s standard providing that leave to

27  amend should be granted when "justice requires," which strongly favors allowing amendments.

28  *See Ascon Props., Inc.*, 866 F.2d at 1160.  Plaintiff is incorrect in arguing Rule 16(b) is not

                                                    7

1   applicable here.  *See* Mot. at 7; *see also* Mot. to Amend Reply ("Reply") at 1-2, ECF No. 31.  The

2   motion to amend comes well after the deadline set during the scheduling conference, and

3   therefore requires application of the two-step analysis described in *Johnson*, 975 F.2d at 608–09.

4   Plaintiff must satisfy both 16(b)(4) and 15(a)(2) to justify the filing of a second amended

5   complaint at this juncture.

6             Given Rule 16's allowance for courts to effectively control their docket, the court

7   finds good cause in this case despite the deficiencies in plaintiff's motion.  *See Eckert Cold*

8   *Storage, Inc.*, 943 F. Supp. at 1233.  First, the COVID-19 pandemic was undeniably "not

9   reasonably foreseeable" when the scheduling conference took place on December 13, 2019.

10  ECF No. 12, *see* Coronavirus Timeline, *N.Y. Times*  (on December 31, "Chinese authorities

11  treated dozens of cases of pneumonia of unknown cause"; January 11 reportedly first date deaths

12  recorded).[3]  Second, plaintiff appears to have taken steps reasonably "promptly and diligently" to

13  seek an amendment to the scheduling order as reviewed above.  Plaintiff's request to file a second

14  amended complaint arises from the same factual circumstances leading to defendants' request to

15  strike the first amended complaint.  The request to amend is meant to correct deficiencies

16  plaintiff's counsel attributes to the haste with which she drafted the first amended complaint in

17  the chaotic early days of the COVID-19 pandemic.  *See* Chau Decl. ¶¶ 5–10.  Plaintiff asserts,

18  and defendants don't dispute, that since Mr. Whitefleet's substitution, counsel has attempted to

19  reach a stipulation allowing her to cure the pleading errors defendants identify.  *See* Mot. to

20  Amend. at 10.

21            Defendants do not argue prejudice, and this court does not independently observe

22  any prejudicial effect from granting leave to amend.  The court GRANTS plaintiff's motion for

23  leave to file a second amended complaint.

24  /////

25  /////

26  /////

27

28

---

[3] https://www.nytimes.com/article/coronavirus-timeline.html (last accessed Oct. 14, 2020).

1    IV.    SANCTIONS

2        A.    Legal Standard

3            Rule 11 sanctions are an extraordinary remedy and are "reserve[d] . . . for the rare

4    and exceptional case where the action is clearly frivolous, legally unreasonable or without legal

5    foundation, or brought for an improper purpose." *Operating Engineers Pension Trust v. A-C Co.*,

6    859 F.2d 1336, 1344 (9th Cir. 1988). "[T]he central purpose of Rule 11 is to deter baseless

7    filings in district court and thus . . . streamline the administration and procedure of the federal

8    courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (citing Advisory

9    Committee Note on Rule 11, 28 U.S.C. App., p. 576). Rule 11 imposes a duty on attorneys to

10   "conduct a reasonable factual investigation" and perform "adequate legal research" to determine

11   whether the "theoretical underpinnings of the complaint are warranted by existing law or a good

12   faith argument for an extension, modification or reversal of existing law." *Christian v. Mattel,*

13   *Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal citations omitted); *see also Business Guides,*

14   *Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 551 (1991). Sanctions

15   stemming from the complaint must satisfy this two-prong test: (1) is the complaint "legally or

16   factually 'baseless' from an objective perspective," and (2) has the attorney conducted "'a

17   reasonable and competent inquiry' before signing and filing it." *Christian*, 286 F.3d at 1127

18   (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997). If the complaint is both

19   baseless, and the attorney has not conducted reasonable inquiry, then Rule 11 sanctions are

20   appropriate.

21       B.    Discussion

22           The court declines to impose sanctions on plaintiff, while cautioning against

23   repeating pleading by way of the kind of speculation evident in the operative complaint.

24   Defendants point to language in the complaint they say is "hyperbole" and inflammatory, and

25   meant to "prolong and multiply the proceedings, and materially increase the burden on

26   [d]efendants or the court, or [] presented for an improper purpose" and so is sanctionable. Mem.

27   of Points & Authorities in Support of Rule 11 Sanctions, ECF 32-1 at 2. They go on to identify

28   13 of the 117 paragraphs in the complaint specifically as containing unsupported and

9

1    inflammatory language. *Id.* at 2-3.  These paragraphs contain claims alleging, for example,

2    organization-wide post-traumatic stress disorder (PTSD) among the ranks of the Vallejo Police

3    Department, and that officers act on "a gang like mentality and/or hating and/or having a fear of

4    black men."  FAC ¶¶ 57, 58.  This language, unsupported by meaningful factual allegations, is

5    speculative and not consistent with what is required to state a claim in federal court.  The court

6    declines at this point however to find the complaint as a whole is "legally or factually baseless,"

7    *Christian*, 286 F.3d at 1127, given plaintiff's request to further amend the complaint and the

8    opportunity amendment provides to ensure the complaint is fully compliant with Rule 11.

9    Defendant's motion for sanctions is DENIED.

10       V.       CONCLUSION

11            The motion to strike is DENIED, the motion to amend is GRANTED, and the

12   motion for sanctions is DENIED.  This order resolves ECF Nos. 23, 25, 32.

13        IT IS SO ORDERED.

14   DATED:  December 24, 2020.

15   _____

16             CHIEF UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28