UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH LAKE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF VALLEJO, et al.,<br><br>Defendants. | No.  2:19-cv-01439-DAD-KJN<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 119) |

This matter came before the court on March 7, 2023 for hearing on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 119.)  Attorney Wendy Chau appeared by video for plaintiff Joseph Lake; Attorney John Whitefleet appeared by video for defendants.  (Doc. No. 123.)  At the hearing, the court heard argument and took the matter under submission.  For the reasons explained below, the court will grant in part and deny in part defendants' motion to dismiss.

## BACKGROUND

This civil rights action proceeds on the operative third amended complaint ("TAC") filed by plaintiff Joseph Lake against defendants City of Vallejo, City of Vallejo Police Department ("Vallejo Police Department"), City Council of the City of Vallejo ("City Council"), police officer Anthony Romero-Cano, police officer Travis Aspegren, police sergeant Theodore J.

/////

1

1   Postolaki, and police officer Timothy Nichols.  (Doc. No. 117.)[1]  Attached to and incorporated

2   into plaintiff's TAC are 17 exhibits.  (Doc. Nos. 117-1–117-17.)  Plaintiff alleges as follows in

3   the TAC.

4           On July 27, 2018, several City of Vallejo police officers responded to a call reporting a

5   shooting of a victim.  (Doc. No. 117 at ¶ 18.)  The police dispatch system reported that the

6   suspected shooter was a 5'10'' black male wearing a black hooded sweatshirt who had fled the

7   scene in a black Lincoln four-door sedan that was waiting for him.  (Id.)  At the time police

8   arrived on scene, plaintiff was heading to a convenience store, and "[d]ue to [plaintiff's] Christian

9   beliefs and values, [he] was compelled to help a victim of a shooting in an alley that [plaintiff]

10  was near."  (Id.)  According to a police report attached to the TAC, plaintiff was walking away

11  from the scene when defendant Vallejo Police Department officers Aspegren and Romero-Cano

12  arrived.  (Doc. No. 117-8 at 2.)  Defendant Postolaki, a sergeant with the Vallejo Police

13  Department who was already on the scene, pointed at plaintiff and directed nearby police officers

14  to "make contact with" plaintiff and identify him.  (Id. at 2, 8–9.)  In response to that directive,

15  defendants Aspegren and Romero-Cano made contact with plaintiff—"whose involvement had

16  not been verified"— and requested that he produce identification; each of the three or five times

17  he was asked to do so, plaintiff refused.  (Id. at 2.)  Both defendants Aspegren and Romero-Cano

18  then moved to place plaintiff in handcuffs.  (Id.)  When plaintiff did not comply with their

19  instructions, three or four officers at the scene took plaintiff down to the ground.  (Doc. Nos. 117

20  at ¶ 158; 117-8 at 2.)  The situation quickly became violent; after taking plaintiff to the ground,

21  the officers physically restrained him, and plaintiff contends that they broke his right arm during

22  the encounter.  (Doc. Nos. 117 at ¶ 25; 117-8 at 2.)  At each step—when describing their decision

23  to request identification from plaintiff, to handcuff him, and to restrain him forcefully—the police

24  emphasized that plaintiff "is 6'5" tall and weighs 330 pounds."  (Doc. No. 117-8 at 2.)  Plaintiff

25  was arrested by the officers for a misdemeanor obstruction of justice, but charges were never

26  brought by the district attorney due to insufficient evidence.  (Doc. Nos. 117-8 at 2; 117-9.)

27  _____

28  [1]  On December 14, 2022, the court granted in part defendants' motion to dismiss plaintiff's
    second amended complaint, with leave to amend.  (Doc. No. 112.)

Based on the forgoing factual allegations, plaintiff asserts five causes of action in the TAC: (1) a claim against defendants City of Vallejo and Postolaki for unlawful stop / "unreasonable seizure of a person-Terry Stop" in violation of the Fourth Amendment under 42 U.S.C. § 1983; (2) an unspecified violation of the Fourth Amendment under 42 U.S.C. § 1983 that is not asserted against any particular defendant, rather it is asserted only against "Defendant in Individual Capacity"; (3) a claim of "Excessive Force/Assault & Battery" in violation of the Fourth Amendment under 42 U.S.C. § 1983 asserted against defendant City of Vallejo and "against individual defendants in their individual capacity"; (4) a claim of "Unreasonable Seizure of Person" in violation of the Fourth Amendment under 42 U.S.C. § 1983, asserted against defendant City of Vallejo and "against individual defendants in their individual capacity"; (5) a *Monell* claim asserted against defendants City of Vallejo and the Vallejo City Council. (Doc. No. 117 at 19–31.)

On January 27, 2023, defendants filed the pending motion to dismiss plaintiff's TAC in its entirety for failure to state a cognizable claim. (Doc. No. 119.) On February 20, 2023, plaintiff filed an opposition to the pending motion, and defendants filed their reply thereto on February 28, 2023. (Doc. Nos. 121, 122.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light

3

1   most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

2   the court need not assume the truth of legal conclusions cast in the form of factual allegations.

3   *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

4   require detailed factual allegations, "it demands more than an unadorned, the-defendant-

5   unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

6   mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

7   *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements

8   of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is

9   inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

10  defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen.*

11  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

12  **ANALYSIS**

13      The court will begin by addressing defendants' arguments in support of the dismissal of

14  each of plaintiff's five claims.  Then, the court will address several housekeeping issues raised by

15  defendants' pending motion regarding whether certain parties are properly named in this action.

16  **A.      Unlawful Detention (Claim 1)**

17      Defendants seek dismissal of plaintiff's first claim brought under 42 U.S.C. § 1983, in

18  which he asserts a violation of his rights under the Fourth Amendment based on an allegedly

19  unlawful investigatory stop (i.e., a *Terry* stop), which he brings against defendants Postolaki and

20  City of Vallejo.[2]  (Doc. No. 119-1 at 4–5.)

21      Section 1983 provides that "[e]very person who, under color of any [state law] subjects, or

22  causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

23  privileges, or immunities secured by the Constitution . . . shall be liable to the party injured . . . ."

24  42 U.S.C. § 1983.  "Section 1983 does not create substantive rights; it merely serves as the

25

26  [2]  Although plaintiff's first, third, and fourth claims are asserted against individual police officer
    defendants and the defendant City of Vallejo, the court's analysis as to these three claims is
27  limited to the individual defendants because plaintiff's first, third, and fourth claims brought
    against defendant City of Vallejo will be dismissed for the reasons explained in the final section
28  of this order.

4

1    procedural device for enforcing substantive provisions of the Constitution and federal statutes."

2    *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (citing *Chapman v. Hous. Welfare*

3    *Rights Org.*, 441 U.S. 600, 617 (1979)).  "To state a claim under § 1983, a plaintiff must allege

4    two essential elements:  (1) that a right secured by the Constitution or laws of the United States

5    was violated, and (2) that the alleged violation was committed by a person acting under the color

6    of State law."  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citation

7    omitted).[3]

8         The Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1 (1968) permits "limited police

9    intrusions on a person's freedom of movement and personal security when an officer's suspicion

10   falls short of the 'probable cause' required to execute an arrest or a 'full' search."  *Thomas v.*

11   *Dillard*, 818 F.3d 864, 874 (9th Cir. 2016).  Under *Terry*, "not all personal intercourse between

12   policemen and citizens involves 'seizures' of persons"; rather, it is "[o]nly when the officer, by

13   means of physical force or show of authority, has in some way restrained the liberty of a citizen

14   may [courts] conclude that a 'seizure' has occurred."  392 U.S. at 19 n.16; *see also United States*

15   *v. Mendenhall*, 446 U.S. 544, 553 (1980) ("We adhere to the view that a person is 'seized' only

16   when, by means of physical force or a show of authority, his freedom of movement is

17   restrained.").  Since *Terry*, the Supreme Court has "held repeatedly that mere police questioning

18   does not constitute a seizure."  *Florida v. Bostick*, 501 U.S. 429, 434 (1991).  However, a person

19   will be considered to have been seized when, "in view of all of the circumstances surrounding the

20   incident, a reasonable person would have believed that he was not free to leave."  *Mendenhall*,

21   446 U.S. at 554.  "Examples of circumstances that might indicate a seizure, even where the

22   person did not attempt to leave, would be the threatening presence of several officers, the display

23   of a weapon by an officer, some physical touching of the person of the citizen, or the use of

24   /////

25   _____

26   [3]  However, "government officials are protected from liability for civil damages by the doctrine of
     qualified immunity 'unless a plaintiff pleads facts showing (1) that the official violated a statutory
27   or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged
     conduct.'"  *Davis v. City of San Jose*, 69 F. Supp. 3d 1001, 1004 (N.D. Cal. 2014) (quoting *Wood*
28   *v. Moss*, 572 U.S. 744, 757 (2014)).

1  language or tone of voice indicating that compliance with the officer's request might be

2  compelled." *Id.*

3      "To initiate a brief stop to investigate potential criminal activity, a stop that does not rise

4  to the level of an arrest, an officer must have reasonable suspicion to believe 'criminal activity

5  may be afoot.'" *Thomas v. Dillard*, 818 F.3d 864, 874 (9th Cir. 2016) (quoting *Terry*, 392 U.S. at

6  30).  This is "not a particularly high threshold to reach."  *United States v. Valdes-Vega*, 738 F.3d

7  1074, 1078 (9th Cir. 2013) (en banc).  Although "a mere hunch is insufficient to justify a stop, the

8  likelihood of criminal activity need not rise to the level required for probable cause, and it falls

9  considerably short of satisfying a preponderance of the evidence standard." *Id.*

10      In the pending motion to dismiss, defendants argue that plaintiff was not "stopped" within

11  the meaning of a Fourth Amendment seizure because plaintiff was "walking in a public street in

12  the midst of a call for service of shooting in the area[] when [he was] approached and asked if he

13  saw what happened." (Doc. No. 119-1 at 5.)  Defendants contend that plaintiff was subjected to

14  "mere questioning alone."  (*Id.*)  The court does not agree.  The allegations in plaintiff's TAC,

15  construed liberally as the court must at this stage of the litigation, plausibly allege that plaintiff

16  was stopped within the meaning of *Terry*.  Specifically, plaintiff has alleged in his TAC, and as

17  reflected in the police reports attached to the TAC, that he was "walking away from the scene"

18  outside of "the tapped [sic] crime area like many other people [who] were just walking around

19  passing by" when defendant Postolaki pointed at plaintiff and directed defendants Aspergren and

20  Romero-Cano to "make contact with" plaintiff and identify him.  (Doc. Nos. 117 at ¶ 18; 117-8 at

21  2, 8–9.)  Moreover, in the TAC plaintiff alleges that, "[t]his action was predicated by Sergeant

22  Ted Postolaki having ordered [defendants Aspergren and Romero-Cano] to 'ID him' as [plaintiff]

23  was freely walking to the convenience store" and "[a]s a result of the order from a superior

24  officer, Officers Aspergren [sic] and Cano *physically detain* [sic] [plaintiff] . . . ."  (Doc. No. 117

25  at ¶ 19) (emphasis added) (alleging that "instead of respecting the right of a private person to not

26  cooperate with officers . . . Officers Aspergren [sic] and Cano unilaterally and unlawfully chose

27  to use force . . .").  These allegations indicate that the "mere questioning" of plaintiff for his

28  identification occurred after defendants Aspegren and Romero-Cano "ma[d]e contact with" and

6

"physical detain[ed]" plaintiff, thus allegedly preventing him from walking away.  Indeed, the fact that the officers asked for plaintiff's identification after he was physically detained further suggests that this encounter was a non-consensual *Terry* stop.  *Cf. United States v. Christian*, 356 F.3d 1103, 1106 (9th Cir. 2004) (finding that a stop of a defendant in an apartment building to ask for his identification was a *Terry* stop and noting that the requesting of identification is one of the "most common investigative techniques used in *Terry* stops").  Plaintiff's TAC is certainly not a model of clarity with respect to its allegations.  Nonetheless, the court finds that these alleged facts plausibly state that this encounter by the named defendants with plaintiff was a non-consensual stop under *Terry* because it resulted from defendant Postolaki's use and display of authority that caused plaintiff to be physically detained.  *See Mendenhall*, 446 U.S. at 552.

Next, defendants argue that defendant Postolaki is entitled to dismissal of this claim based upon qualified immunity because the facts alleged in the TAC indicate that he had reasonable suspicion under the circumstances to conduct the stop in order to identify plaintiff.  (Doc. No. 119-1 at 5.)  Defendants point to the allegations in the TAC that the suspect was a 5'10'' black male, that plaintiff was seen near the area where the shooting took place, and that plaintiff was "allegedly administering aid to the victim."  (*Id.* at 6–7.)  The court finds defendants argument in this regard unavailing.

First, based on the allegations in the TAC, plaintiff does not share any physical similarities with the suspected shooter aside from the fact that both are black men.  While the shooter was allegedly 5'10'' wearing a "black hoodie and black pants" and fled the scene in a black four-door Lincoln, plaintiff is alleged to be 6'5'' and weighing over 330 pounds with no mention of his clothes or that he left or arrived at the scene in a vehicle—in fact, it is alleged that plaintiff was on foot when he was stopped by police.  (Doc. No. 117 at ¶¶ 18, 31, 33; 117-8 at 2, 8–9.)

Next, contrary to defendants' assertion in the pending motion, plaintiff does not allege in the TAC that he was "administering aid" to the victim but rather that he was providing help by cooperating with police.  Specifically, plaintiff alleges that when defendants Aspegren and Romero-Cano arrived on the scene, defendant Postolaki "had already spoken to [plaintiff] twice

7

1   and determined he was not involved in the shooting."  (Doc. No. 117 at ¶ 33.)  The TAC alleges

2   facts plausibly suggesting that following this encounter plaintiff was walking away when

3   defendant Postolaki nonetheless directed defendants Aspegren and Romero-Cano to "make

4   contact with" and identify plaintiff.   (Doc. Nos. 117 at ¶ 33; 117-8 at 2, 8–9.)  However, plaintiff

5   was under no obligation to cooperate with police or to stay put and thus his walking away or

6   refusing to provide his identification, without more, would not create a reasonable suspicion of

7   criminal activity afoot.  *See Florida*, 501 U.S. at 437 ("We have consistently held that a refusal to

8   cooperate, without more, does not furnish the minimal level of objective justification needed for a

9   detention or seizure."); *United States v. Fuentes*, 105 F.3d 487, 490 (9th Cir. 1997) ("Mere refusal

10  to consent to a stop or search does not give rise to reasonable suspicion or probable cause.  People

11  do not have to voluntarily give up their privacy or freedom of movement, on pain of justifying

12  forcible deprivation of those same liberties if they refuse."); *see also United States v. Landeros*,

13  913 F.3d 862, 865, 870 (9th Cir. 2019).

14          The only remaining allegation that defendants contend amounts to reasonable suspicion is

15  plaintiff's mere proximity to a crime scene.  However, that allegation alone is insufficient to raise

16  a reasonable suspicion, especially when plaintiff alleges that he was one of "many other people . .

17  . walking around [and] passing by" the scene of the shooting.  (Doc. No. 117 at ¶ 18.)  Indeed,

18  "police are not entitled, under the guise of *Terry*, to stop a person simply for being in the vicinity

19  of a suspected crime."  *United States v. Gallinger*, 227 F. Supp. 3d 1163, 1169 (D. Idaho 2017)

20  (finding that police officers lacked reasonable suspicion to conduct a *Terry* stop where

21  defendant's "only connection to any suspected crime was his location in the general vicinity of

22  the 911 caller" because defendant's "mere presence in the area was not necessarily suspicious on

23  its own, despite the late hour and relatively deserted streets"); *United States v. Garcia*, No. 2:21-

24  cr-00224-CDS-VCF, 2023 WL 36173, at *5–6 (D. Nev. Jan. 3, 2023) (finding that police officers

25  lacked reasonable suspicion to conduct a *Terry* stop when the defendant was in vicinity of

26  suspected domestic dispute but did not match description of the assailant given in the 911 call);

27  *Irvine v. Cook*, No. 4:22-cv-00218-BLW, 2023 WL 1102425, at *6 (D. Idaho Jan. 30, 2023)

28  (holding that officer lacked reasonable suspicion when the plaintiff failed to heed an officer's

1  command to stop riding away on a bicycle immediately upon the officer arriving on scene to

2  investigate a physical disturbance that plaintiff was near).  In addition, notably absent from the

3  police reports attached to and incorporated into the TAC are any facts indicating that police

4  officers had any particularized reasons to stop plaintiff.  (Doc. No. 117-8 at 2, 8–9.)  Thus,

5  although the TAC does not allege the foregoing events in the most reader-friendly fashion, the

6  court concludes that when the allegations of the TAC are viewed in the light most favorable to

7  plaintiff, as is required at this stage of the litigation, plaintiff has plausibly alleged that defendant

8  Postolaki directed the *Terry* stop of plaintiff but lacked reasonable suspicion to do so.

9          Finally, accepting the allegations in the TAC as true, the court also finds that if proven the

10  constitutional right that plaintiff has alleged was violated—plaintiff's unlawful *Terry* stop for

11  merely being within the vicinity of a suspected crime—was a right that was clearly established

12  when the events which are the subject of the TAC occurred.  *See Gallinger*, 227 F. Supp. 3d at

13  1169; *Garcia*, 2023 WL 36173, at *5–6; *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)

14  ("An individual's presence in an area of expected criminal activity, standing alone, is not enough

15  to support a reasonable, particularized suspicion that the person is committing a crime.").  In

16  addition, having examined the TAC closely, the court finds that the question of whether

17  defendant Postolaki had reasonable suspicion to stop plaintiff to identify him is an inherently fact-

18  driven question that cannot be resolved without a more developed factual record before the court.

19  *See Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018) ("Our denial of qualified immunity at

20  this stage of the proceedings does not mean that this case must go to trial" because "[o]nce an

21  evidentiary record has been developed through discovery, defendants will be free to move for

22  summary judgment based on qualified immunity") (quoting *O'Brien v. Welty*, 818 F.3d 920, 936

23  (9th Cir. 2016)).

24          Accordingly, for the reasons explained above, the court will deny defendants' motion to

25  dismiss plaintiff's first cause of action as brought against defendant Postolaki.

26  **B.      (Unspecified) Fourth Amendment Violation (Claim 2)**

27          Defendants seek to dismiss plaintiff's second cause of action "as improperly asserted

28  against no one and/or redundant to the third cause of action."  (Doc. No. 119-1 at 8.)  Defendants

1  argue that because plaintiff's second claim incorporates all prior paragraphs it amounts to a

2  "shotgun style" pleading that violates the requirements of Federal Rule of Civil Procedure 8.  (*Id.*)

3  In addition, defendants correctly note that this claim is not asserted against any particular

4  defendant, nor does it specify what Fourth Amendment violation is being alleged.  (*Id.*)

5  According to defendants, the few allegations stated under the heading for this second claim are

6  merely duplicative of plaintiff's third claim for excessive use of force/assault and battery.  (*Id.* at

7  8–9.)  In plaintiff's opposition, he clarifies that his second claim was intended to be asserted

8  against defendants Postolaki, Romero-Cano, Aspegren, and Nichols.  (Doc. No. 121 at 8–9.)

9  However, plaintiff does not clarify in his opposition to the pending motion what specific violation

10  of the Fourth Amendment he is asserting in this claim, nor is it apparent based on the few

11  allegations stated in the TAC beneath the heading for the second claim.

12         At the hearing on the pending motion, the court asked plaintiff's counsel to clarify

13  plaintiff's second cause of action.  Although plaintiff's counsel initially did not know what claim

14  her client was asserting, she later remembered that the second cause of action was intended to be

15  a claim for "wrongful arrest."  However, that intended second claim would be entirely duplicative

16  of plaintiff's fourth claim of unlawful arrest in violation of Fourth Amendment brought against

17  defendants Postolaki, Romero-Cano, Aspegren, and Nichols.  (Doc. No. 117 at 29.)

18         Due to plaintiff's lack of specific allegations in the TAC to support a separate and distinct

19  cause of action, the court will grant defendants' motion to dismiss the second claim due to

20  plaintiff's failure to allege "a short and plain statement of the claim showing that the pleader is

21  entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plaintiff's second claim will be dismissed, without

22  leave to amend, because plaintiff's counsel was unable to articulate—in the opposition brief or at

23  the hearing—what specific claim would be asserted if further leave to amend were to be granted.

24  As a result, the court can only conclude that granting further leave to amend as to plaintiff's

25  second claim would be futile.

26  **C.      Excessive Use of Force and Assault and Battery (Claim 3)**

27         Next, defendant seeks to dismiss plaintiff's third cause of action in the TAC, which asserts

28  a violation of the Fourth Amendment under 42 U.S.C. § 1983 based on "Excessive Force/Assault

& Battery" against defendant City of Vallejo and defendants Postolaki, Romero-Cano, Aspegren, and Nichols.  (Doc. Nos. 117 at 24; 119-1 at 9.)

In defendants' pending motion, they argue that plaintiff's third cause of action, insofar as it is based on state law assault and battery claims, should be dismissed because state laws are an insufficient predicate for a § 1983 claim.  (Doc. No. 119-1 at 9.)  Plaintiff's counsel did not address this argument in the opposition to the pending motion.  At the hearing, plaintiff's counsel clarified that the third cause of action is for excessive use of force, and she requested leave to amend so that she could remove the state law causes of action from this claim.

Defendants are correct that "[t]o establish a civil rights claim under 42 U.S.C. § 1983, a plaintiff must assert more than a violation of state tort law—he must show that the defendant deprived him of an interest protected by the Constitution or federal law." *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1032 (9th Cir. 2000) (holding that "[i]nsofar as Weiner attempted to predicate a § 1983 claim on the allegedly defamatory statement, that claim fails because Weiner made no showing of a violation of the Constitution or federal law"); *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981) ("Only federal rights, privileges, or immunities are protected by the section. Violations of state law alone are insufficient.").  To the extent plaintiff seeks to assert a § 1983 claim based solely on state common law assault and battery, that aspect of plaintiff's third cause of action will be dismissed without leave to amend.  However, to the extent plaintiff's third cause of action under § 1983 is intended to be predicated on an asserted violation of the Fourth Amendment stemming from the alleged excessive use of force, that claim is proper.  The next question is whether plaintiff has sufficiently alleged a claim of excessive use of force.

Defendants argue that plaintiff's third cause of action against defendants Nichols and Postolaki should be dismissed because the allegations are insufficient to suggest that either of those two defendants were involved in the alleged beating of plaintiff.  (Doc. No. 119-1 at 9.)  However, in plaintiff's opposition, he cites to portions of the TAC reflecting facts that if proved would demonstrate involvement by defendants Nichols and Postolaki in the alleged beating and arrest of plaintiff.  (Doc. No. 121 at 9–10.)  Specifically, the TAC alleges that defendant Postolaki "ordered" defendants Aspegren and Romero-Cano to approach and identify plaintiff.  (Doc. No.

1    117 at ¶¶ 19, 133–34, 157.)  The TAC further alleges that "[w]hen Mr. Lake was asked if he had

2    ID and said Why?' Cano immediately grabbed Mr. Lake to take Mr. Lake down.  Nichols,

3    Aspregren and Postolaki all joined in the beating of Mr. Lake." (*Id.* at ¶ 158.)  The court

4    concludes that these allegations are sufficient because they identify and link each of the named

5    defendants to plaintiff's excessive use of force claim and explain what each defendant allegedly

6    did.  *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be

7    individualized and focus on the duties and responsibilities of each individual defendant whose

8    acts or omissions are alleged to have caused a constitutional deprivation."); *cf. Awad v. Birbenk*,

9    No. 22-cv-00665-DMR, 2023 WL 137473, at *4 (N.D. Cal. Jan. 9, 2023) (granting a motion to

10   dismiss where the defendant police officers were referred to collectively as a group and the

11   complaint did not allege facts regarding each officer's role in the alleged constitutional violation);

12   *Singh v. Bunch*, No. 1:15-cv-00646-DAD-BAM, 2017 WL 117857, at *12 (E.D. Cal. Jan. 11,

13   2017) (granting a motion to dismiss where the plaintiff had failed to "allege specific acts on the

14   part of defendant Harris").

15       Accordingly, defendants' motion to dismiss plaintiff's third cause of action will be

16   granted to the extent plaintiff seeks to rely on state law as a predicate for asserting a claim under

17   42 U.S.C. § 1983 but will otherwise be denied.

18       The court advises plaintiff's counsel that any assault and battery claims that plaintiff

19   wishes to assert in a fourth amended complaint must be stated separately, as independent causes

20   of action.  Based on plaintiff's counsel's representations at the hearing on the pending motion, it

21   appears that plaintiff intends the assault and battery claims to be asserted as entirely separate

22   claims from plaintiff's excessive use of force claim brought under § 1983.  Based on this

23   representation, plaintiff will be granted leave to amend to add separate state law assault and

24   battery claims, asserting them as their own standalone claims against the appropriate individual

25   defendants.  Plaintiff's counsel is advised, however, that this will be plaintiff's last opportunity to

26   amend the complaint with respect to plaintiff's assault and battery claims.  The court has

27   identified this pleading defect and explained the deficiency during the hearing on defendants'

28   motion to dismiss the second amended complaint, yet that pleading deficiency was not remedied

1    by plaintiff in the TAC.  *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir.

2    2008) ("Leave to amend may also be denied for repeated failure to cure deficiencies by previous

3    amendment.").

4    **D.      Unlawful Arrest (Claim 4)**

5            Defendants also seek dismissal of plaintiff's fourth cause of action, which is brought

6    against defendants City of Vallejo, Postolaki, Romero-Cano, Aspegren, and Nichols, alleging a

7    violation of the Fourth Amendment under 42 U.S.C. § 1983 based on an unlawful arrest.  (Doc.

8    Nos. 117 at 29; 119-1 at 10.)

9            In the pending motion, defendants contend that plaintiff has not alleged sufficient facts to

10   support an unlawful arrest claim against defendants Postolaki and Nichols because the TAC only

11   identifies defendants Romero-Cano and Aspegren as the arresting officers.  (Doc. No. 119-1 at

12   10.)  Plaintiff's counsel failed to address this argument in the opposition to the pending motion

13   and instead merely contends that the arrest was unlawful and recounts events alleged in the TAC

14   that are unrelated to the issues raised by defendants.  (Doc. No. 121 at 10.)

15           Nevertheless, the court finds that the TAC sufficiently alleges that all of the individual

16   defendants were "integral participants" in the allegedly unlawful arrest, even if they were not the

17   arresting officer listed on the police report.  Defendants' citation to a single paragraph of the TAC

18   does not persuade the court otherwise.  *See Barrera-Vasquez v. Cnty. of Riverside*, No. 21-cv-

19   1172-JGB-KK, 2022 WL 17216817, at *7 (C.D. Cal. Aug. 2, 2022) ("[T]he correct test is

20   whether any of the Defendants were integral participants to Plaintiffs' allegedly unlawful

21   detention and arrest, not whether any directly detained and arrested Plaintiffs."); *see also*

22   *Nicholson v. City of Los Angeles*, 935 F.3d 685, 692 (9th Cir. 2019) ("[A]n officer could be held

23   liable where he is just one participant in a sequence of events that gives rise to a constitutional

24   violation.").

25           Accordingly, defendants' motion to dismiss plaintiff's fourth cause of action will be

26   denied.

27   /////

28   /////

13

1   **E.**      **Municipal Liability (Claim 5)**

2          Defendants also seek dismissal of the TAC's fifth cause of action in which plaintiff asserts

3   a *Monell* claim under 42 U.S.C. § 1983 against defendants City of Vallejo and the Vallejo City

4   Council.  (Doc. Nos. 117 at 19–31; 119-1 at 10.)

5          It is well-established that "a municipality cannot be held liable *solely* because it employs a

6   tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat*

7   *superior* theory."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978); *see*

8   *also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  To state a *Monell* claim against a

9   municipality, plaintiff must allege facts demonstrating "that an 'official policy, custom, or

10  pattern' on the part of [the municipality] was 'the actionable cause of the claimed injury.'"  *Tsao*

11  *v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los*

12  *Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)).  The Ninth Circuit has recognized four theories

13  for establishing municipal liability under *Monell*:  "(1) an official policy; (2) a pervasive practice

14  or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final

15  policymaker."  *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

16         Plaintiff appears to allege two theories for his *Monell* claim as asserted in the TAC:  (i)

17  defendants have engaged in an allegedly unconstitutional policy or custom of arresting, through

18  the use of excessive force, and charging suspects when those suspects refuse to provide their

19  identification when requested by police; and (ii) defendants have failed to adequately train

20  officers in de-escalation techniques or failed to hire officers trained in such de-escalation

21  techniques.  (Doc. No. 117 at ¶ 212, 218–20, 230, 233–34.)

22         1.      Alleged Unconstitutional Policy or Custom

23         In the pending motion, defendants argue that "[p]laintiff relies on vague and conclusory

24  allegations of a custom or practice" and "fails to allege any other instances of arrest other than his

25  own circumstances."  (Doc. No. 119-1 at 11.)  Defendants maintain that because the TAC "only

26  alleges [a] single incident" plaintiff has failed to allege a custom or practice that is "so 'persistent

27  /////

28  /////

14

1    and widespread' that it constitutes a 'permanent and well settled' policy."[4]  (*Id.*) (citation

2    omitted).  In opposition, plaintiff does not appear to contest defendants' contention in this regard.

3    (Doc. No. 121 at 11.)  Rather, counsel states that plaintiff "would like to add several lawsuits,

4    news reports and refer to the hiring advertisement" to allege that there were other instances aside

5    from plaintiff's own arrest supporting the existence of a custom or practice.  (*Id.*)

6           As an initial matter, based on plaintiff's counsels' argument at the hearing and opposition

7    to the pending motion, the court concludes that plaintiff has conceded that that TAC fails to allege

8    a plausible *Monell* claim due to a lack of alleged incidents indicating the existence of the

9    purported longstanding practice of custom.  *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.

10   1996); *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) (noting that "one or

11   two incidents are insufficient to establish a custom or policy").[5]  Thus, the court will grant

12   defendants' motion to dismiss plaintiff's *Monell* claim.  Nonetheless, the court must determine

13   whether plaintiff should be granted an additional opportunity to amend this claim.  Given

14   plaintiff's opposition brief and argument at the hearing, the court has some initial doubt as to

15   whether granting further leave to amend as to this claim would be worthwhile.  In plaintiff's

16   opposition and at the hearing, plaintiff's counsel requested that the court grant plaintiff leave to

17   file a fourth amended complaint that would contain additional allegations drawn from four district

18   court actions and four news articles to plausibly allege that there was an unconstitutional custom

19   and practice "of sufficient duration, frequency and consistency."  *Trevino*, 99 F.3d at 918; (Doc.

20   No. 121 at 11, 14.)  In fact, plaintiff filed a request for judicial notice of the four district court

21   /////

22

23   [4]  Defendants also argue that plaintiff's *Monell* claim is insufficiently alleged because the police
     reports attached to the TAC "bely the allegation that Plaintiff was arrested for not providing
24   identification" but instead was arrested for "safety reasons" or "resisting arrest."  (Doc. Nos. 119-
     1 at 11; 122 at 6.)  The court does not find this argument persuasive because plaintiff specifically
25   alleges in the TAC that defendant Aspegren "completely lied in his [police report]" and, in any
     event, the facts alleged plausibly indicate that the reason for the arrest was due to plaintiff's
26   failure to produce his identification.  (Doc. No. 117 at 9.)

27
     [5]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
28   36-3(b).

                                                    15

1  actions and news articles in connection with his opposition to the pending motion.  (Doc. No.

2  121-1.)

3        In plaintiff's request for judicial notice, he asks that the court take judicial notice of "court

4  records" (without specifying exactly which court records) from four district court cases involving

5  the City of Vallejo as a defendant:  (i) *Edwards v. City of Vallejo, et al.*, No. 2:18-cv-02434-

6  MCE-AC (E.D. Cal. filed on Sept. 5, 2018); (ii) *Burrell, et al. v. City of Vallejo et al.*, No. 2:19-

7  cv-01898-WBS-KJN (E.D. Cal. filed on Sept. 18, 2019); (iii) *Villalobos v. City of Vallejo, et al.*,

8  No. 2:19-cv-02461-WBS-KJN (E.D. Cal. filed on Dec. 9, 2019); and (iv) *Hutchins v. City of

9  Vallejo et al.*, No. 4:19-cv-05724-YGR (N.D. Cal. filed on Sept. 11, 2019).  (Doc. No. 121-1 at

10  1–2.)  In addition, plaintiff requests that the court take judicial notice of four news articles:  (i)

11  *Vallejo To Pay $270,698 To Settle Excessive Force Lawsuit Against Off-Duty Police Officer*,

12  CBS News Bay Area (July 2, 2021); (ii) *Vallejo Detective With History of Misconduct

13  Allegations Investigated for Racism*, KQED (Oct. 18, 2021); (iii) *California City Residents Pay

14  $300,000 To Veteran Brutalized By Officer Who Didn't Want To Be Filmed*, techdirt.com (Dec.

15  12, 2022); and (iv) *How A Deadly Police Force Ruled A City*, The New Yorker (Nov. 16, 2020).

16  (Doc. Nos. 121-5, 121-6, 121-7, 121-8.)  Although the court will grant plaintiff's request for

17  judicial notice, in doing so, the court is merely acknowledging the existence of the cases filed in

18  district court and the news articles that plaintiff has identified; the court is not accepting the truth

19  of the contents of the documents on the district court dockets or the newspaper articles for

20  purposes of ruling on this motion to dismiss.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–

21  90 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record' without

22  converting a motion to dismiss into a motion for summary judgment. . . . But a court may not take

23  judicial notice of a fact that is 'subject to reasonable dispute.'"); *Von Saher v. Norton Simon

24  Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice

25  of publications introduced to indicate what was in the public realm at the time, not whether the

26  contents of those articles were in fact true.").

27        Because the court cannot assume the truth of the facts contained with the documents that

28  will be judicially noticed, the existence of those court documents and news articles cannot form

16

1    the basis of additional factual allegations to cure the deficiencies in plaintiff's TAC with respect

2    to the *Monell* claim.  For this reason, plaintiff's counsel argued at the hearing that the court

3    should grant plaintiff leave to file a fourth amended complaint to add allegation of these

4    additional incidents involving police officers from the City of Vallejo.

5         Defendants argue in their reply that "the lawsuits present dissimilar factual backgrounds"

6    and thus do not warrant granting leave to amend.  (Doc. No. 122 at 6–7.)  At the hearing,

7    defendants' counsel elaborated on this position explaining that any additional incidences alleged

8    by plaintiff would have to involve the exact same type of excessive use of force that plaintiff

9    allegedly experienced, and that the cases plaintiff has identified do not.  Thus, before granting

10   plaintiff leave to amend his claim, the court will address the applicable legal standard for

11   assessing how similar alleged other incidents must be to plausibly state a *Monell* claim.

12        Although "[i]t is difficult to discern from the caselaw the quantum of allegations needed

13   to survive a motion to dismiss a pattern and practice claim," *Gonzalez v. County of Merced*, No.

14   1:16-cv-01682-LJO-SAB, 2017 WL 6049179, at *2 (E.D. Cal. Dec. 7, 2017), "where more than a

15   few incidents are alleged, the determination appears to require a fully-developed factual record."

16   *Lemus v. County of Merced*, No. 1:15-cv-00359-MCE-EPG, 2016 WL 2930523, at *4 (E.D. Cal.

17   May 19, 2016), *aff'd*, 711 F. App'x 859 (9th Cir. 2017); *see also Becker v. Sherman*, No. 1:16-cv-

18   0828-AWI-MJS, 2017 WL 6316836, at *9 (E.D. Cal. Dec. 11, 2017) (finding that "four assaults

19   related to [plaintiff's] housing assignment and status as a transgender inmate . . . sufficiently

20   alleged the existence of a CDCR custom"), *findings and recommendations adopted,* 2018 WL

21   623617 (E.D. Cal. Jan. 30, 2018).  "Perhaps the most that can be said is that one or two incidents

22   ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a

23   policy, taking into account their similarity, their timing, and subsequent actions by the

24   municipality." *J.M. by & Through Rodriguez v. Cnty. of Stanislaus*, No. 1:18-cv-01034-LJO-

25   SAB, 2018 WL 5879725, at *5–6 (E.D. Cal. Nov. 7, 2018) (finding that allegations of four

26   incidents that did not "closely match[] the fact pattern of the events alleged here" but which all

27   occurred within 13 months of the incident involving the plaintiff were sufficient to assert a

28   custom or practice and rejecting defendants argument that the incidents did not involve

1    unconstitutional levels of force because "[w]hether the prior incidents did involve misuses of

2    force and establish that [the] alleged custom, policy, or practice exists is a question of fact").

3    Although the prior instances must be alleged in sufficient detail to put defendants on notice of the

4    alleged policy connecting those prior incidents to the one involved in this case, the ultimate

5    question of whether they are sufficiently connected to the alleged policy is a question of fact. *See*

6    *id.* at *6; *Est. of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1173 (E.D. Cal. 2019)

7    ("Whether these previous cases are all manifestations of the same policy or custom, and whether

8    that policy or custom was the moving force behind the injury to decedent in this case, are factual

9    issues to be determined following the discovery phase of this litigation.").

10           To determine whether the district court cases identified by plaintiff could constitute

11   similar incidents to support an inference of a custom or practice of constitutional violations by

12   defendant City of Vallejo, the court must review the allegations in the complaints in those

13   referred to cases.  In doing so, the undersigned has briefly reviewed the operative pleadings in the

14   four identified cases solely for the purpose of assessing whether granting further leave to amend

15   would be futile in this case. *See Seever v. City of Modesto*, No. 1:21-cv-01373-JLT-EPG, 2022

16   WL 17418355, at *6 (E.D. Cal. Dec. 5, 2022) (finding that "[p]laintiffs may rely on the prior

17   settlements and pending lawsuits to plead their claim").

18           First, *Edwards* concerned an alleged incident that allegedly occurred on or around July 30,

19   2017 in the City of Vallejo in which a Vallejo police officer responded to a 911 call regarding the

20   use of a slingshot directed at kids. *Edwards v. City of Vallejo, et al.*, No. 2:18-cv-02434-MCE-

21   AC, Compl., Doc. No. 1 at 4–6 (E.D. Cal. Sept. 5, 2018).  The officer "aggressively approached"

22   the plaintiff, stating "come over here, I want to talk to you!" and then purportedly used excessive

23   force to detain and unlawfully arrest plaintiff, including by means of a "choke hold/carotid

24   restraint," even though plaintiff did not fit the description of the suspect from the 911 call. *Id.*

25           Second, *Burrell* concerned an alleged incident that allegedly occurred on or around

26   January 22, 2019 in the City of Vallejo in which the plaintiff was filming from his porch a Vallejo

27   police officer holding a suspect at gunpoint. *Burrell, et al. v. City of Vallejo et al.*, No. 2:19-cv-

28   01898-WBS-KJN, Third Am. Compl., Doc. No. 40 at 1 (E.D. Cal. Sept. 18, 2019).  The officer

1    approached the plaintiff and physically attacked him by throwing him into a wall and wooden

2    pillar for "interfering," and then took plaintiff into custody but released him without any charges

3    being filed. *Id.*

4          Third, *Villalobos* concerned an alleged incident on or around November 4, 2018 in the

5    City of Vallejo in which the plaintiff was mistakenly targeted by police officers as a suspect and

6    then detained in a church bathroom through the use of excessive force, including by "snatching

7    his arm behind him and twisting it behind his back." *Villalobos v. City of Vallejo, et al.*, No.

8    2:19-cv-02461-WBS-KJN, First Am. Compl., Doc. No. 15 at 5 (E.D. Cal. Dec. 9, 2019).

9          Fourth, *Hutchins* involved an alleged incident on or around August 11, 2018 in Walnut

10   Creek, California, in which "a tense exchange occurred" between plaintiff and an off-duty Vallejo

11   police officer resulting in the officer drawing his gun on plaintiff, informing plaintiff he was

12   being charged with a crime and going to jail, and then beating the plaintiff by "repeated fist

13   strikes" and by slamming plaintiff's head against the ground. *Hutchins v. City of Vallejo et al.*,

14   No. 4:19-cv-05724-YGR, Compl., Doc. No. 1 at 6 (N.D. Cal. on Sept. 11, 2019).

15         Having briefly reviewed the allegations in these four prior cases that plaintiff's counsel

16   has indicated an intention to rely upon to attempt to properly state his *Monell* claim in a fourth

17   amended complaint, the court concludes that granting of leave to file a fourth amended complaint

18   would not be futile.  All of the foregoing incidents occurred within a year or less of the July 28,

19   2018 incident involving plaintiff in this case and the first three appear to involve sufficiently

20   similar conduct as alleged in this case concerning the excessive use of non-lethal force.  Plaintiff

21   is advised that the court's conclusion in this regard is not a conclusive pre-determination that any

22   *Monell* claim he asserts in a fourth amended complaint will be deemed sufficiently stated merely

23   because he refers to the four cited cases by their case numbers.  Any fourth amended complaint

24   plaintiff elects to file must include sufficient allegation of factual details regarding these four

25   incidents—and any other incidents that plaintiff may describe—to put defendants on notice of the

26   alleged policy connecting those prior incidents to the incident alleged in this case.  For their part,

27   defendants are also advised that the level of factual similarity they believe plaintiff must allege to

28   survive dismissal, as argued at the hearing on the pending motion, is not supported by the

1   applicable case law in the undersigned's view because ultimately, that similarity is a question of

2   fact that is properly addressed after the discovery phase of litigation. *See J.M.*, 2018 WL

3   5879725, at *5–6; *Est. of Osuna*, 392 F. Supp. 3d at 1173; *see also Ochoa v. City of San Jose*, No.

4   21-cv-02456-BLF, 2021 WL 7627630, at *6 (N.D. Cal. Nov. 17, 2021) (denying a motion to

5   dismiss a *Monell* claim where "several of the incidents show significant facial similarities to the

6   alleged facts of Plaintiff's arrest" and rejecting defendant's arguments regarding factual similarity

7   as "too granular for the pleading stage"); *McCoy v. City of Vallejo*, No. 2:19-cv-001191-JAM-

8   CKD, 2020 WL 374356, at *4 (E.D. Cal. Jan. 23, 2020) (rejecting the defendants' "attempt to

9   differentiate these instances through surrounding circumstance" and finding that the incidents

10   were the same general type of alleged excessive force (e.g., lethal shootings) to be sufficiently

11   similar to survive a motion to dismiss).

12          Accordingly, the court will grant defendants' motion to dismiss plaintiff's *Monell* claim

13   based on an allegedly unconstitutional policy or custom, but plaintiff will be granted leave to file

14   a fourth amended complaint to address the pleading deficiencies discussed above.  Specifically,

15   plaintiff is granted leave to amend his *Monell* claim for the limited purpose of alleging additional

16   incidents supporting an inference that there is such a practice of "sufficient duration, frequency

17   and consistency that the conduct has become a traditional method of carrying out policy,"

18   *Trevino*, 99 F.3d at 918, such as the examples identified in plaintiff's request for judicial notice

19   and any additional instances of excessive use of force generally similar to what plaintiff is alleged

20   to have suffered here.  However, plaintiff is once again warned that this will be his final

21   opportunity to adequately state a *Monell* claim because this exact pleading deficiency was

22   identified in plaintiff's second amended complaint and was not cured in his TAC.  (Doc. No.

23   112); *see Abagninin*, 545 F.3d at 742.

24          2.     Alleged Failure to Train, Hire, and Discipline

25          Defendants also move to dismiss plaintiff's *Monell* claim to the extent it is based on a

26   failure to train, or hire police officers already trained, on "de-escalation techniques" because

27   plaintiff "does not allege other incidents indicating a general failure to train or hire, other than his

28   own incident."  (Doc. Nos. 119-1 at 13; 122 at 7.)  In plaintiff's opposition to the pending motion,

1   his counsel failed to address this argument by defendant and instead merely cited to paragraphs of

2   the TAC contending that his failure to train or hire claim is sufficiently alleged.  (Doc. No. 121 at

3   12.)  Nonetheless, plaintiff also requests the court grant him further leave to amend as to this

4   claim if the court concludes that it is not sufficiently alleged in the TAC.  (*Id.*)

5          Under *Monell*, "the inadequacy of police training may serve as the basis for § 1983

6   liability only where the failure to train amounts to deliberate indifference to the rights of persons

7   with whom the police come into contact."  *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158

8   (9th Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).  The plaintiff

9   "must demonstrate a 'conscious' or 'deliberate' choice on the part of a municipality in order to

10  prevail on a failure to train claim."  *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008) (citation

11  omitted).  "Under this standard, [the plaintiff] must allege facts to show that the [municipality]

12  'disregarded the known or obvious consequence that a particular omission in their training

13  program would cause [municipal] employees to violate citizens' constitutional rights.'"  *Flores*,

14  758 F.3d at 1159 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Connick*, 563

15  U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a

16  claim turns on a failure to train.").  Ordinarily, plaintiffs must allege a "pattern of similar

17  constitutional violations by untrained employees" in order to state a claim for deliberate

18  indifference based upon a failure to train.  *Flores*, 758 F.3d at 1159 (quoting *Connick*, 563 U.S. at

19  62).

20         Here, plaintiff does not sufficiently allege a pattern of similar constitutional violations

21  regarding defendant City of Vallejo's failure to train, or hire police officers already trained, with

22  respect to de-escalation techniques.  *See id.*  Having failed to allege that pattern, plaintiff would

23  have to allege that this case falls within "a narrow range of circumstances, [where] a pattern of

24  /////

25  /////

26  /////

27  /////

28  /////

1  similar violations might not be necessary to show deliberate indifference."[6]  *Connick*, 563 U.S. at

2  63.  However, the court cannot conclude from the allegations of the TAC that this is a

3  circumstance in which "the unconstitutional consequences of failing to train could be so patently

4  obvious that [a defendant] could be liable under § 1983 without proof of a pre-existing pattern of

5  violations."  *Id.* at 64 (citing *Harris*, 489 U.S. at 390 n.10).  Indeed, plaintiff does not even argue

6  this is a case where the alleged failure to train falls within the narrow range of single-incident

7  liability.

8          Accordingly, defendants' motion to dismiss plaintiff's *Monell* claim, to the extent that

9  claim is based on an alleged failure to train or hire, will be granted with leave to amend.  Plaintiff

10  is advised that in amending the TAC to add additional incidents of failure to train, he must—at

11  minimum—allege more than two incidents that predate the incident involving plaintiff to be

12  considered plausible notice to defendant City of Vallejo that there was a failure to train, or hire

13  police officers already trained, in de-escalation techniques amounting to a "pattern of similar

14  constitutional violations."  *See Flores*, 758 F.3d at 1159 ("The isolated incidents of criminal

15  wrongdoing by one deputy other than Deputy Doe 1 do not suffice to put the County . . . on notice

16  that a course of training is deficient in a particular respect, nor that the absence of such a course

17  will cause violations of constitutional rights.") (internal quotations omitted); *Est. of Mendez v.*

18  *City of Ceres*, 390 F. Supp. 3d 1189, 1207–11 (E.D. Cal. 2019) (explaining that "the Court has

19  employed three factors in evaluating whether Plaintiffs have alleged a sufficient pattern of prior

20  constitutional violations to demonstrate plausibly deliberate indifference regarding training and

21  supervision related to unreasonable force . . . timing, similarity, and subsequent municipal

22  action[.]").  Plaintiff is also advised that this will likely be his only opportunity to amend and

23  _____

24  [6]  For example, in *Harris*, the Supreme Court postulated that a failure to train police officers on
    the constitutional limits of excessive force prior to arming them satisfied the narrow range of
    single-incident liability, because "[t]here is no reason to assume that police academy applicants
25  are familiar with the constitutional constraints of the use of deadly force."  489 U.S. at 389–90.
    In contrast, in *Flores*, the Ninth Circuit posited that "[t]here is, however, every reason to assume
26  that police academy applicants are familiar with the criminal prohibition on sexual assault, as
    everyone is presumed to know the law."  758 F.3d at 1160 (finding that failure to train police
27  officers not to commit sexual assault was not "so patently obvious that the [defendants] were
    deliberately indifferent") (citing *United States v. Budd*, 144 U.S. 154, 163 (1892)).

28

1  properly allege a failure to train or hire claim in light of both his counsel's demonstrated inability

2  to cure pleading deficiencies, *see Abagninin*, 545 F.3d at 742, and the fact that he waited until his

3  TAC to first present this claim.

4  **F.      Proper Parties**

5         Finally, defendants move to dismiss plaintiff's claims against certain defendants on the

6  ground that those claims are not properly brought against those defendants.  (Doc. No. 119-1 at

7  13.)

8         First, defendants contend that plaintiff improperly brings his first, third, and fourth causes

9  of action against defendant City of Vallejo.  (*Id.* at 10.)  Plaintiff's counsel did not respond to this

10  argument in the opposition to the pending motion.  At the hearing, plaintiff's counsel appeared to

11  indicate that defendant City of Vallejo was included as a party with respect to these three causes

12  of action because plaintiff was seeking to hold the city vicariously liable for the defendant police

13  officers' alleged actions.  However, it is well established that a "municipality cannot be held

14  liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held

15  liable under § 1983 on a *respondeat superior* theory."  *Benavidez*, 993 F.3d at 1153 (9th Cir.

16  2021) (quoting *Monell*, 436 U.S. at 691).  Because that is precisely and specifically what plaintiff

17  seeks to do with respect to defendant City of Vallejo and the first, third, and fourth causes of

18  action, the court will dismiss plaintiff's first, third, and fourth causes of action as brought against

19  defendant City of Vallejo only, without further leave to amend.

20         Second, defendants argue that plaintiff's fifth cause of action under *Monell* brought

21  against defendant Vallejo City Council is redundant to plaintiff's fifth cause of action against

22  defendant City of Vallejo.  (Doc. No. 119-1 at 13.)  However, as the court previously explained in

23  its prior order denying defendants' motion to dismiss plaintiff's claims against the defendant City

24  Council, defendants have failed to cite any binding or persuasive authority showing that

25  defendant City Council lacks the capacity to be sued.  *See Shih v. City of Corona*, No. 09-cv-

26  6001-ODW-OP, 2009 WL 10699605, at *3–4 (C.D. Cal. Oct. 8, 2009) (denying motion to

27  dismiss city council as defendant because the moving party failed to meet their burden to show

28  /////

1    that it lacked capacity to be sued).  Defendants' motion to dismiss plaintiff's fifth cause of action

2    brought against defendant Vallejo City Council will therefore be denied.

3         Third, defendants move to dismiss defendant Vallejo Police Department from this action

4    because plaintiff has not asserted any claims against this defendant in the TAC.  (Doc. No. 119-1

5    at 13.)  In opposition, plaintiff argues that "Vallejo Police Department is responsible for the lack

6    of training" and "should be named."  (Doc. No. 121 at 13.)  Because the court is dismissing

7    plaintiff's *Monell* claim with leave to amend, the court will grant defendants' motion to dismiss

8    defendant Vallejo Police Department but will also grant plaintiff leave to amend solely to add

9    defendant Vallejo Police Department as a defendant with respect to plaintiff's fifth cause of

10   action if he can properly do so.

11        Fourth, defendants seek dismissal of all Doe defendants because plaintiff has had ample

12   time to identify those defendants but has failed to do so.  (Doc. No. 119-1 at 13–14.)  In

13   opposition, plaintiff argues that it would be prejudicial at this stage of the litigation to dismiss the

14   Doe defendants because there has been limited discovery due to a granting of a stay of discovery

15   until the sufficiency of the pleadings is resolved.  (Doc. No. 121 at 14.)  Although plaintiff "may

16   refer to unknown defendants as 'Does' at this stage, [he] must nevertheless allege specific facts

17   showing how each particular doe defendant violated [his] rights."  *Thomas on behalf of Thomas v.*

18   *County of San Diego*, No. 20-cv-1979-CAB-MDD, 2021 WL 2715086, at *3 (S.D. Cal. July 1,

19   2021) (citation omitted).  Plaintiff has not done so here.  There are no factual allegations in the

20   TAC regarding the role of the Doe defendants in the alleged constitutional violations.  *See Lomeli*

21   *v. Cnty. of San Diego*, No. 22-cv-0684-GPC-BLM, 2022 WL 15524620, at *3 (S.D. Cal. Oct. 27,

22   2022) ("Federal courts will dismiss claims against Doe Defendants when the complaint—

23   especially for § 1983 suits—does not 'even minimally explain how any of the unidentified parties

24   [that the plaintiff] seeks to sue personally caused a violation of [the plaintiff's] constitutional

25   rights.'") (citation omitted); *see also Leer*, 844 F.2d at 634 ("The [plaintiff] must set forth specific

26   facts as to each individual defendant's wrongdoing.").  At the hearing, plaintiff's counsel

27   explained that the Doe defendants were named protectively but counsel did not indicate that there

28   were any particular Doe defendants whose identity counsel expected to uncover through

1    discovery.  Based on plaintiff's counsel's representations that plaintiff is unaware of any Doe

2    defendants whose identity will be revealed through discovery, the court will dismiss all Doe

3    defendants from this action without leave to amend at this time.

4            Fifth, defendants argue that all claims asserted against defendants Romero-Cano,

5    Aspegren, Postolaki, and Nichols in their official capacity should again be dismissed consistent

6    with this court's prior order.  (Doc. No. 119-1 at 4.)  The court has reviewed the TAC and agrees

7    that there remains ambiguity as to whether plaintiff is seeking to sue these named defendants in

8    their official and/or individual capacities.  (Doc. No. 117 at ¶¶ 12–15.)  To the extent plaintiff is

9    seeking proceed against defendants Romero-Cano, Aspegren, Postolaki, and Nichols in their

10   official capacities based on allegations in paragraphs 12–15 of the TAC, all such claims are

11   dismissed as redundant of defendant City of Vallejo, consistent with this court's prior order.

12   (Doc. No. 112); *see also Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533

13   F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are

14   named, and the officer is named only in an official capacity, the court may dismiss the officer as a

15   redundant defendant.").

## CONCLUSION

17           For the reasons explained above,

18   1.      The court grants in part and denies in part defendants' motion to dismiss (Doc. No.

19           119) as follows:

20           a.      The court grants defendants' motion to dismiss plaintiff's first, third, and

21                   fourth causes of action as brought against defendant City of Vallejo,

22                   without further leave to amend;

23           b.      The court denies defendants' motion to dismiss plaintiff's first cause of

24                   action as brought against defendant Postolaki;

25           c.      The court grants defendants' motion to dismiss plaintiff's second cause of

26                   action, without further leave to amend;

27           d.      The court grants defendants' motion to dismiss plaintiff's third cause of

28                   action to the extent that claim is predicated on alleged violations of state

law, without further leave to amend.  However, plaintiff is granted leave to amend to add state law claims for assault and battery;

e.    The court denies defendants' motion to dismiss plaintiff's third cause of action brought under 43 U.S.C. § 1983 to the extent that claim is predicated on the alleged use of excessive force in violation of the Fourth Amendment;

f.    The court denies defendants' motion to dismiss plaintiff's fourth cause of action;

g.    The court grants defendants' motion to dismiss plaintiff's fifth cause of action, with leave to amend, but only to the extent specified in this order above;

    i.    The court denies defendants' motion to dismiss plaintiff's fifth cause of action brought against the defendant Vallejo City Council as redundant;

    ii.    The court will grant defendants' motion to dismiss defendant Vallejo Police Department but will grant plaintiff leave to amend to add defendant Vallejo Police Department as a defendant only as to plaintiff's fifth cause of action

h.    The court grants defendants' motion to dismiss all Doe defendants from this action, without further leave to amend; and

i.    The court grants defendants' motion to dismiss plaintiff's claims to the extent they are brought against defendants Romero-Cano, Aspegren, Postolaki, and Nichols in their official capacities;

2.    The court grants plaintiff's request for judicial notice (Doc. No. 121-1); and

/////

/////

/////

/////

26

3.    Plaintiff shall file a fourth amended complaint, or a notice of an intent to proceed only on the claims in the third amended complaint that have survived dismissal herein, within twenty-one (21) days from the date of entry of this order.

IT IS SO ORDERED.

Dated:   **June 16, 2023**

UNITED STATES DISTRICT JUDGE

27