1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JOSEPH LAKE,                                No.  2:19-cv-01439-DAD-CSK

12                  Plaintiff,

13          v.                                    FINAL PRETRIAL ORDER

14    CITY OF VALLEJO, et al.,

15                  Defendants.

16

17          On August 28, 2025, the court conducted a final pretrial conference in this case.

18    Attorneys Wendy Chau and James A. Cook appeared as counsel for plaintiff; Attorneys John

19    Robert Whitefleet and Angad Gangapuram appeared as counsel for defendant.  Having

20    considered the parties' objections to the tentative pretrial order, the court issues this final pretrial

21    order which will govern the trial of this action.

22          Plaintiff Lake brings this civil rights action against defendants City of Vallejo, City of

23    Vallejo Police Department, Anthony Romero-Cano, Travis Aspegren, and Theodore J. Postolaki,

24    asserting claims arising under 42 U.S.C § 1983 for unreasonable use of force and unlawful arrest

25    in violation of the Fourth Amendment, and for common law battery.

26    I.     JURISDICTION/VENUE

27          Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343(a)(3), and 1367.  Jurisdiction is not

28    contested.

1

1    Venue is proper pursuant to 28 U.S.C. § 1391(b).  Venue is not contested.

2    II.    JURY

3    Both parties have demanded a jury trial.  The jury will consist of eight jurors.

4    III.    UNDISPUTED FACTS

5    1.    On July 27, 2018, at approximately 4:44 pm a 911 caller reported a shooting in

6    Vallejo, California at Marin Street and Tennessee Street.

7    2.    The Computer-Aided Dispatch ("CAD") report, through the Mobile Dispatch

8    Computer and over the radio, communicated that the suspected shooter was "at large," the suspect

9    was 5'10, heavy, muscular, wearing a black hoodie and black pants, and had gotten into a black

10    Lincoln four door vehicle which left the scene.

11    3.    Defendant Officers Cano and Aspegren were dispatched and en route to the scene

12    by 4:46 p.m.

13    4.    Defendant Sergeant Postolaki arrived on the scene at 4:48 p.m.

14    5.    Defendant Postolaki immediately began to assess how best to provide emergency

15    medical services to the victim of the shooting and secure the crime scene for investigation.

16    6.    Defendant Postolaki started in the alley where the victim was located and asked

17    members of the public to leave the immediate area so paramedics could provide aid.

18    7.    While defendant Postolaki was clearing the alley, plaintiff Joseph Lake

19    approached him.

20    8.    Plaintiff told defendant Postolaki that the vehicle parked in the middle of

21    Tennessee Street was the victim's father's car and was not associated with the shooter.

22    9.    Defendant Postolaki acknowledged the information and then asked plaintiff to wait

23    and speak with the officers outside the immediate vicinity of the victim.

24    10.    There were at least a dozen members of the public at the scene, and defendant

25    Postolaki briefly talked with a woman who was among those present and she offered him

26    information about a vehicle.

27    11.    Defendant Postolaki then retrieved yellow caution tape and began to cordon off the

28    crime scene.

1    12.    While unraveling the caution tape, defendant Postolaki noticed plaintiff again and

2    asked him "Hey sir, did you see what happened?  I already talked to you, you were telling me

3    about the car."

4    13.    Plaintiff responded by saying that he saw a person run "that way" but that nobody

5    knows where the person went.

6    14.    Defendant Postolaki asked plaintiff to give him a description of the person

7    running, and plaintiff responded, "I don't know what he look like" before directing defendant

8    Postolaki to speak with "the girl in the white pants."

9    15.    Plaintiff began walking away, and defendant Postolaki then asked plaintiff for his

10   name.

11   16.    Plaintiff responded with what sounded to defendant Postolaki like "Brandon" and

12   started walking away.

13   17.    At approximately 4:54 p.m., defendant Officers Aspegren and Cano arrived at the

14   scene.

15   18.    Defendant Postolaki then shouted to defendant Officers Cano and Aspegren, "Hey!

16   Get his ID right there," and pointed to plaintiff.

17   19.    Defendant Postolaki then immediately turned around and resumed securing the

18   crime scene with caution tape.

19   20.    Defendant Officers Aspegren and Cano approached plaintiff and asked for his ID.

20   21.    Plaintiff indicated that he was going to the Okbah Grocery Store.

21   22.    Officers Aspegren and Cano moved in to physically detain plaintiff and a struggle

22   ensued.

23   23.    Officers Aspegren and Cano simultaneously grabbed plaintiff's wrists.

24   24.    Defendant Postolaki observed this disturbance and ran over.

25   25.    Officer Cano had an arm wrapped around plaintiff's neck, and he and defendant

26   Officer Aspegren took plaintiff to the ground.

27   26.    Defendant Postolaki immediately gave orders to the other officers, such as "Let's

28   turn him over" and "Get him on his stomach."

3

1    27.    While plaintiff was lying on the ground on his side, defendant Postolaki grabbed

2    his right wrist and repeatedly told him to give him his arm.

3    28.    Plaintiff said several times that his arm was broken, that he could not bend it, and

4    "ow."

5    29.    Defendant Officer Aspegren placed a hand and then a knee on plaintiff's face and

6    neck, pushing him to the ground.

7    30.    The officers handcuffed plaintiff's hands behind his back and positioned him on

8    his stomach.

9    31.    Once plaintiff was handcuffed, defendants Aspegren and Cano lifted plaintiff to

10   his feet, walked plaintiff over to their patrol vehicle, patted him down, emptied his pants pockets,

11   and placed him in their vehicle

12   32.    Defendants Aspegren and Cano then transported plaintiff to Sutter Hospital

13   Solano.

14   33.    After being cleared by Sutter Hospital, plaintiff was booked into Solano County

15   Jail for violation of California Penal Code § 148(a)(1).

16   34.    Plaintiff was released from jail the next day.

17   IV.    DISPUTED FACTUAL ISSUES

18   1.    Whether plaintiff was already walking away when defendant Postolaki asked

19   plaintiff for his name.

20   2.    Whether plaintiff gave a false name to defendant Postolaki.

21   3.    Whether officers reasonably believed plaintiff sufficiently fit the description of the

22   suspect.

23   4.    Whether officers reasonably believed plaintiff refused to provide ID and how

24   many times.

25   5.    Whether plaintiff asked the officers "why" they needed his ID and the officers did

26   not provide a specific reason stating, "Because we asked for it.  Where's your ID at?  Give me

27   your ID now."

28   6.    Whether plaintiff resisted the detention and in what manner.

4

7.      Whether defendant Aspegren's use of a wrist lock was excessive force.

8.      Where the officers were positioned while attempting to restrain plaintiff, and to what degree if any of weight was being applied to him.

9.      Whether defendant Cano's application of an arm around plaintiff's neck, or a knee on plaintiff's back was excessive force

10.     Whether any of the physical contact by defendant Postolaki in maneuvering plaintiff's arm behind plaintiff's back was excessive force.

11.     Whether officers reasonably believed plaintiff was reaching underneath his body.

12.     Whether plaintiff was uncooperative in the officers' investigation.

13.     Whether plaintiff suffered any injuries as a result of the incident.

V.      DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE

The parties have not yet filed motions *in limine*.  The court does not encourage the filing of motions *in limine* unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial.  The parties anticipate filing the motions *in limine* listed below.  Any motions *in limine* counsel elects to file shall be filed no later than **21 days before trial**.  Opposition shall be filed no later than **14 days before trial** and any replies shall be filed no later than **10 days before trial**.  Upon receipt of any opposition briefs, the court will notify the parties if it will hear argument on any motions *in limine* prior to the first day of trial.

Plaintiff's Motions *in Limine*

1.      Motion to limit or prohibit evidence of plaintiff's prior bad acts such as prior criminal history, prior unrelated court cases including but not limited to restraining orders, child support, marriage dissolution, and judgement creditors.

2.      Motion to limit witness testimony regarding plaintiff's prior confrontations with law enforcement.

/////

/////

/////

5

1    Defendants' Motions *in Limine*

2         1.      Motion to exclude plaintiff from introducing any evidence or arguing the District

3    Attorney did not file charges, and to preclude introduction of related documents including the

4    Notice of Intent Not to Prosecute and Notification of Non-filing.

5         2.      Motion to exclude introduction of certain testimony regarding dismissed issues,

6    such as plaintiff's former claims for unlawful detention and *Monell* liability.

7         3.      Motion to exclude introduction of certain testimony from Roger Clark.

8         4.      Motion to exclude introduction of past incidents of force and prior lawsuits.

9         5.      Motion to exclude introduction of officers' personnel records and/or other items

10   produced under a protective order.

11        6.      Motion to exclude introduction of testimony or evidence by Murph Jackson.

12        7.      Motion to exclude evidence from witnesses not previously disclosed or identified.

13        8.      Motion to prevent plaintiff from calling Steve Darden as a witness.

14        9.      Motion to exclude introduction of medical and billing records, including Northbay

15   Healthcare records JT00051-00155.

16        10.     Motion to preclude all witnesses who have not yet testified from the courtroom.[1]

17        11.     Motion to exclude testimony of witness Drs. Kohli, Siegel, and Parkin.

18        12.     Motion to exclude exhibits on plaintiff's Exhibit C (Doc. No. 179), numbers 11–

19   13.

20        13.     Motion to exclude testimony/opinions by plaintiff on the subjective motivations of

21   defendants, including but not limited to race, salary, and overtime.

22   VI.   SPECIAL FACTUAL INFORMATION

23        Pursuant to Local Rule 281(b)(6), the parties are required to submit the following special

24   factual information:

25            (A) The date, place, and general nature of the incident; the
             particular acts, omissions, or conditions constituting the basis for
26            liability; the particular acts, omissions or conditions constituting the

27   _____

[1] As discussed at the final pretrial conference, it is the undersigned's view that a written motion
28   seeking exclusion of witnesses at trial is likely unnecessary.

6

1
2
basis of any defense; any statute, ordinance, or regulation violated by either party; the applicability of the doctrine of strict liability or *res ipsa loquitur*.

3
4
5
6
(B) Each plaintiff's age; injuries sustained; any prior injury or condition worsened; periods of hospitalization; medical expenses and estimated future medical expenses; the period of total and/or partial disability; annual, monthly, or weekly earnings before the incident; earnings loss to date and estimated diminution of future earnings power; property damage; general damages; punitive damages.

7
Local Rule 281(b)(6)(iv)(A)–(B).  In their joint pretrial statement, defendants submitted the

8
following special factual information:

9
10
11
(A) July 27, 2018, at approximately 4:45 p.m., in Vallejo, California.  Plaintiff was detained and then arrested.  Plaintiff alleges unlawful use of force and arrest.  Defendants submit qualified immunity and California Government Code section 820.4.

12
13
(B) Plaintiff is currently 41 years of age; Defendants submit Plaintiff had minor abrasions, no medical expenses or care, no future care.

14
(Doc. No. 176 at 7.)  Plaintiff stated that he opposed this information.  (*Id.*)  The parties were then

15
directed to meet and confer and, in their objections to the court's tentative pretrial order, provide

16
the special factual information pertaining to this action in the appropriate section as undisputed

17
facts or disputed factual issues.  (Doc. No. 179 at 5–6.)  However, the parties did not comply with

18
the court's directive, and plaintiff still states in his objections that he "opposes Defendants'

19
'special factual information'" but provides no basis for doing so.  (Doc. No. 184 at 6.)  Plaintiff's

20
objection is therefore overruled and defendants' proposed special factual information statement is

21
adopted by this order.

22
VII.    RELIEF SOUGHT

23
24
1.    Plaintiff seeks general damages, compensatory damages, special damages, punitive damages, and attorney fees pursuant to 42 U.S.C. § 1988.

25
2.    Defendants seek dismissal and attorney fees pursuant to 42 U.S.C. § 1988.

26
VIII.    POINTS OF LAW

27
The claims and defenses asserted in this action arise under both federal and state law.

28
Plaintiff brings two claims against defendants Aspegren, Cano, and Postolaki and one claim

7

against defendants Aspegren, Cano, Postolaki, and the City of Vallejo.  The points of law are as follows.

    1.    The elements of, standards for, and burden of proof in a claim for excessive use of force in violation of the Fourth Amendment brought under 42 U.S.C. § 1983.

    2.    The elements of, standards for, and burden of proof in a claim for unlawful arrest in violation of the Fourth Amendment brought under 42 U.S.C. § 1983.

    3.    The elements of, standards for, and burden of proof in a claim for common law battery.

    4.    The elements of, standards for, and burden of proof in a claim for damages under 42 U.S.C. § 1983.

    5.    The elements of, standards for, and burden of proof in a claim for punitive damages under 42 U.S.C. § 1983.

    6.    The elements of, standards for, and burden of proof in an affirmative defense of resisting arrest under California Penal Code § 834a.

    7.    The elements of, standards for, and burden of proof in an affirmative defense of self-defense.

    8.    The elements of, standards for, and burden of proof in an affirmative defense asserting immunity under California Government Code §§ 820.2, 820.4, and 820.8.

    9.    The elements of, standards for, and burden of proof in an affirmative defense of qualified immunity.

    10.    The elements of, standards for, and burden of proof in an affirmative defense of implied consent.

    11.    The elements of, standards for, and burden of proof in an affirmative defense of comparative negligence.

Trial briefs addressing the points of law implicated by these remaining claims shall be filed with this court no later than **7 days before trial** in accordance with Local Rule 285.

/////

8

1    ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY

2   ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT

3   BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

4   IX.    ABANDONED ISSUES

5         1.    Defendants' first affirmative defense.

6         2.    Defendants' third affirmative defense.

7         3.    Defendants' seventh affirmative defense.

8         4.    Defendants' eighth affirmative defense.

9         5.    Defendants' ninth affirmative defense.

10        6.    Defendants' eleventh affirmative defense.

11        7.    Defendants' twelfth affirmative defense.

12        8.    Defendants' thirteenth affirmative defense.

13        9.    Defendants' fourteenth affirmative defense.

14        10.    Defendants' fifteenth affirmative defense.

15   X.    WITNESSES

16        Plaintiff's witnesses shall be those listed in **Attachment A**.  Defendants' witnesses shall

17   be those listed in **Attachment B**.  Each party may call any witnesses designated by the other.

18        A.    **The court does not allow undisclosed witnesses to be called for any purpose,**

19            **including impeachment or rebuttal, unless they meet the following criteria:**

20            (1)    The party offering the witness demonstrates that the witness is for the

21                purpose of rebutting evidence that could not be reasonably anticipated at

22                the pretrial conference, or

23            (2)    The witness was discovered after the pretrial conference and the proffering

24                party makes the showing required in paragraph B, below.

25        B.    Upon the post pretrial discovery of any witness a party wishes to present at trial,

26            the party shall promptly inform the court and opposing parties of the existence of

27            the unlisted witnesses by filing a notice on the docket so the court may consider

28   /////

9

1    whether the witnesses shall be permitted to testify at trial.  The witnesses will not

2    be permitted unless:

3         (1)    The witness could not reasonably have been discovered prior to the

4                discovery cutoff;

5         (2)    The court and opposing parties were promptly notified upon discovery of

6                the witness;

7         (3)    If time permitted, the party proffered the witness for deposition; and

8         (4)    If time did not permit, a reasonable summary of the witness's testimony

9                was provided to opposing parties.

10   XI.    EXHIBITS, SCHEDULES, AND SUMMARIES

11        Plaintiff's exhibits are listed in **Attachment C**.  The parties' joint exhibits are listed in

12   **Attachment D**.[2]  No exhibit shall be marked with or entered into evidence under multiple exhibit

13   numbers.  All exhibits must be pre-marked as discussed below.  At trial, joint exhibits shall be

14   identified as JX and listed numerically, e.g., JX-1, JX-2.  Plaintiff's exhibits shall be listed

15   numerically, and defendants' exhibits, if any, shall be listed alphabetically.

16        The parties must prepare three (3) separate exhibit binders for use by the court at trial,

17   with a side tab identifying each exhibit in accordance with the specifications above.  Each binder

18   shall have an identification label on the front and spine.  The parties must exchange exhibits no

19   later than **28 days before trial**.  Any objections to exhibits shall be filed no later than **14 days**

20   **before trial**.  The final exhibit binders shall be delivered to the court by **the Thursday before**

21   **the trial date.**  In making any objection, the party is to set forth the grounds for the objection.  As

22   to each exhibit which is not objected to, no further foundation will be required for it to be

23   received into evidence, if offered.

24        **The court does not allow the use of undisclosed exhibits for any purpose, <u>including</u>**

25   **<u>impeachment or rebuttal</u>, unless they meet the following criteria:**

26   /////

27   _____

28   [2]  Defendants have indicated that they "would not have any additional exhibits other than what is on the Joint List."  (Doc. No. 183 at 4.)

10

1     A.    The court will not admit exhibits other than those identified on the exhibit lists

2          referenced above unless:

3          (1)    The party proffering the exhibit demonstrates that the exhibit is for the

4                purpose of rebutting evidence that could not have been reasonably

5                anticipated, or

6          (2)    The exhibit was discovered after the issuance of this order and the

7                proffering party makes the showing required in paragraph B, below.

8     B.    Upon the discovery of exhibits after the discovery cutoff, a party shall promptly

9          inform the court and opposing parties of the existence of such exhibits by filing a

10        notice on the docket so that the court may consider their admissibility at trial.  The

11        exhibits will not be received unless the proffering party demonstrates:

12        (1)    The exhibits could not reasonably have been discovered earlier;

13        (2)    The court and the opposing parties were promptly informed of their

14              existence;

15        (3)    The proffering party forwarded a copy of the exhibits (if physically

16              possible) to the opposing party.  If the exhibits may not be copied the

17              proffering party must show that it has made the exhibits reasonably

18              available for inspection by the opposing parties.

19  XII.    DISCOVERY DOCUMENTS

20     Counsel must lodge the sealed original copy of any deposition transcript to be used at trial

21  with the Clerk of the Court no later than **14 days before trial**.

22     Plaintiff has indicated the intent to use the following discovery documents at trial:

23     1.    Defendants' Responses to Interrogatories

24     2.    Defendants' Responses to Request for Production of Documents

25     3.    Defendants' Responses to Request for Admissions

26     4.    Defendants' Initial Disclosures

27  /////

28  /////

1      5.      Defendants' Deposition Transcripts[3]

2      Defendants have indicated the intent to use the following discovery documents at trial:

3      1.      Plaintiff's Responses to Interrogatories

4      2.      Plaintiff's Responses to Request for Production of Documents

5      3.      Plaintiff's Initial Disclosures

6      4.      Plaintiff's Deposition Transcript

7  XIII.  FURTHER DISCOVERY OR MOTIONS

8      None.  Discovery and law and motion are closed under the scheduling order issued in this

9  case.

10  XIV.  STIPULATIONS

11      None.

12  XV.  AMENDMENTS/DISMISSALS

13      None.

14  XVI.  SETTLEMENT

15      The parties have not yet participated in a court-ordered settlement conference, but they

16  believe a settlement conference may be useful in bringing this matter to resolution.  A settlement

17  conference has been scheduled before Chief Magistrate Judge Carolyn K. Delaney on October 14,

18  2025 at 9:30 a.m.  (Doc. No. 181.)

19  XVII.  JOINT STATEMENT OF THE CASE

20      The parties did not provide an agreed-upon neutral statement of the case with their joint

21  pretrial statement.  The parties were ordered to meet and confer and file a joint neutral statement

22  of the case with their objections to the tentative pretrial order.  (Doc. No. 179 at 11.)  In their

23  objections, defendants propose the following:

24          Plaintiff Joseph Lake was detained during an active call for service
           by Vallejo Police Officers Defendants Anthony Romero-Cano,
25

26  _____

[3] Plaintiff was instructed, in his objections to the tentative pretrial order, to list each of the
deposition transcripts intended for use at trial by the name of the deponent and the date that the
27  deposition was taken.  (Doc. No. 179 at 10.)  Plaintiff did not comply.  (*See* Doc. No. 184 at 6.)
The court will consider imposing a sanction due to plaintiff's failure to comply with the court's
28  directive in this regard.

12

1
2
3

> Travis Aspegren, Theodore Postolaki, and claims that the use of force during same and subsequent arrest was a violation of his rights under federal and state law. Defendants deny these claims and deny any violation of federal and state law.

4    (Doc. No. 183 at 4.) Plaintiff did not submit his own statement of the case and indicates that he

5    has "no objections," apparently referring to defendants' proposed neutral statement which the

6    court will adopt. (Doc. No. 184 at 7.)

7    XVIII. SEPARATE TRIAL OF ISSUES

8         The court will bifurcate the trial with respect to plaintiff's punitive damages claim as

9    follows. The court will submit the question of defendants' liability, including liability for

10   punitive damages, to the jury in the first phase of trial. If the jury makes the requisite finding that

11   punitive damages are available, the trial will then proceed to a second phase on the question of

12   the amount of punitive damages to be awarded.

13   XIX.    IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

14        None.

15   XX.     ATTORNEYS' FEES

16        Plaintiff will seek attorneys' fees and costs if he prevails.

17        Defendants also seek attorneys' fees and costs.

18   XXI.    TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

19        Not applicable.

20   XXII. MISCELLANEOUS

21        Not applicable.

22   XXIII. ESTIMATED TIME OF TRIAL/TRIAL DATE

23        Jury trial is scheduled for **December 9, 2025**, at 9:00 a.m. in Courtroom 4 before the

24   Honorable Dale A. Drozd. Trial is anticipated to last 4 court days. The parties are directed to

25   Judge Drozd's Standing Order in Civil Actions, available on his webpage on the court's website.

26        Counsel are directed to contact Pete Buzo, courtroom deputy, at (916) 930-4016, no later

27   than one week prior to trial to ascertain the status of the trial date.

28   /////

1    XXIV. PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS

2          The parties shall file any proposed jury *voir dire* **7 days before trial**.  Each party will be

3    limited to fifteen minutes of supplemental jury *voir dire*.

4          The court directs counsel to meet and confer in an attempt to generate a joint set of jury

5    instructions and verdicts.  The parties shall file any such joint set of instructions **14 days before**

6    **trial**, identified as "Joint Jury Instructions and Verdicts."  To the extent the parties are unable to

7    agree on all or some instructions and verdicts, their respective proposed instructions are due **14**

8    **days before trial**.

9          Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed

10   or disputed, as a Word document to dadorders@caed.uscourts.gov no later than **14 days before**

11   **trial**; all blanks in form instructions should be completed and all brackets removed.

12         Objections to proposed jury instructions must be filed **7 days before trial**; each objection

13   shall identify the challenged instruction and shall provide a concise explanation of the basis for

14   the objection along with citation of authority.  When applicable, the objecting party shall submit

15   an alternative proposed instruction on the issue or identify which of his or her own proposed

16   instructions covers the subject.

17   XXV.  TRIAL BRIEFS

18         As noted above, trial briefs are due **7 days before trial**.

19         IT IS SO ORDERED.

20   Dated:    **September 30, 2025**                          _____

21                                                            DALE A. DROZD
                                                              UNITED STATES DISTRICT JUDGE
22

23

24

25

26

27

28

                                                 14

**ATTACHMENT A**

Plaintiff's Witness List

1. Joseph Lake

2. Roger Clark

3. Anthony Romero-Cano

4. Travis Aspegren

5. Theodore J. Postolaki

6. Timothy Nichols

7. Greg Rouse

8. Steve Darden

9. John McGinness

10. Jonathan Taylor, P.A. at Sutter Solano Medical Center

11. Dr. Siegal, Northbay Healthcare

12. Dr. Parkin, Northbay Healthcare

13. Roger Clark

14. Murph Jackson

15. Lieutenant Sanjay Ramrakha, Vallejo's Person Most Knowledgeable

15

1

**ATTACHMENT B**

2

Defendants' Witness List

3    1.  Anthony Romero-Cano

4    2.  Travis Aspegren

5    3.  Theodore J. Postolaki

6    4.  Timothy Nichols

7    5.  Greg Rouse

8    6.  John McGinness

9    7.  Jonathan Taylor

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT C**

Plaintiff's Exhibit List

| Exh. | Description |
|---|---|
| 1 | Solano County Arrest and Detention Form, Bates COV000001-000004 |
| 2 | Excerpted screen shots from a body camera videos JL - Cano knee on his neck |
| 3 | Sutter Health medical records 7.27.18, Bates JL00007-00034 |
| 4 | Other Northbay Medical Records (prior injuries to injured arm) JL00051-JL00155 |
| 5 | Video clip from Murph Jackson (exhibit video attached to the amended complaint) |
| 6 | Solano County Crime Stoppers Program |

1

**ATTACHMENT D**

2

Joint Exhibit List

3

| Exh. | Description |
|------|-------------|
| JX-1 | Solano County Arrest and Detention Form, Bates COV000001-000002 |
| JX-2 | Vallejo Police Report No. 18-9476, Bates COV000007-000010 |
| JX-3 | CAD report, Bates COV 000052-000054 |
| JX-4 | Body camera video 559-1; 02179563x9DF46.MP4 (Postolaki) |
| JX-5 | Body camera video 655-1; 02179564x9DF46.MP4 (Nichols) |
| JX-6 | Body camera video 679; 02179565x9DF46.MP4 (Aspegren) |
| JX-7 | Body camera video 714-1; 02179566x9DF46.MP4 (Cano) |
| JX-8 | Sutter Health medical records 7.27.18, Bates JL00007-00012 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28